IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED AIR LINES, INC., | ) | |
| | ) | |
| Appellee and Cross-Appellant. | ) | Case Nos. 04 C 6643 |
| | ) | 04 C 6644 |
| | ) | 04 C 6885 |
| | ) | |
| UNITED AIR LINES, INC., | ) | Honorable John W. Darrah |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC BANK USA NATIONAL ASSOCIATION, as trustee, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal and cross-appeal of the judgment of the bankruptcy court of September 29, 2004, by U.S. Bank National Association ("US Bank") and United Airlines, Inc. The appeal of the judgment of the bankruptcy court of October 15, 2004, by United, of a related case, is also before the Court. For the reasons that follow, the decision of the bankruptcy court as to the September 29, 2004 order is affirmed; and the decision of the bankruptcy court as to the October 15, 2004 order is affirmed.

## BACKGROUND

On or about November 1, 1997, the California Statewide Communities Development Authority ("CSCDA") entered into a trust agreement (the "1997 Trust Agreement") with Chase Manhattan Bank and Trust Company. Pursuant to the 1997 Trust Agreement, the CSCDA issued bonds in an aggregate amount of $190,240,000. The bonds were issued to finance the construction, modification, and expansion of certain buildings and improvements at Los Angeles International Airport ("LAX"). HSBC Bank USA National Association "(HSBC") succeeded to Chase Manhattan's interest under the 1997 Trust Agreement on or about January 27, 2003.

Also on or about November 1, 1997, United and the CSCDA entered into a payment agreement (the "1997 Payment Agreement") relating to the bonds. Under the 1997 Payment Agreement, United agreed to make periodic payments to HSBC to cover principal and interest due on the bonds. In particular, United is obligated to pay to HSBC, on or before each date on which principal or interest comes due, "a sum equal to the amount then payable as principal . . and interest upon the Bonds as provided in the Trust Agreement."

The 1997 Trust Agreement establishes a construction fund to be held by HSBC in trust (the "1997 Construction Fund"). A majority of the proceeds from the sale of the bonds was deposited into the 1997 Construction Fund pursuant to the 1997 Trust Agreement. Absent a default under the terms of the 1997 Payment Agreement, monies in the 1997 Construction Fund were to be applied to pay the costs of the projects pursuant to a written requisition submitted by United to HSBC. Upon completion of all the projects, all remaining monies in the 1997 Construction Fund were to be used to pay the bondholders.

The bonds are additionally secured by a pledge and assignment to HSBC of certain CSCDA's interests, which pledge and assignment secures payment of principal and interest on the bonds. HSBC further has a perfected lien on funds held by it, including the 1997 Construction Fund, to secure payment of the bonds in accordance with the terms of the 1997 Trust Agreement.

On or about April 1, 2001, the CSCDA issued, on behalf of United, $34,590,000 in California Statewide Communities Development Authority Special Facilities Revenue Bonds, Series 2001 (the "2001 Bonds"). The proceeds of the bonds were made available to United pursuant to a Payment Agreement dated April 1, 2001, between United and CSCDA (the "2001 Payment Agreement") and a trust agreement dated April 1, 2001, between CSCDA and the trustee, US Bank (the "2001 Trust Agreement"). A portion of the proceeds of the 2001 Bonds were deposited into, among other accounts, a construction fund (the "2001 Construction Fund") established with US Bank as trustee pursuant to the 2001 Trust Agreement.

All of the monies in the 2001 Construction Fund are pledged to the repayment of principal and interest on the 2001 Bonds and are held in trust for the benefit of the bondholders. The 2001 Construction Fund was designed to reimburse United for its costs in constructing certain projects at LAX. United, in turn, is obligated under the 2001 Payment Agreement to make payments of principal and interest on the 2001 Bonds.

In order for United to obtain disbursements from the 2001 Construction Fund, United must submit to US Bank a "Written Request of Corporation." Section 3.04 of the 2001 Trust Agreement sets out the information that must be provided and the representations that must be made in a Written Request. Section 3.04 also provides, in pertinent part, that "[b]efore any payment is made from the Construction Fund by the Trustee, the Corporation [United] *shall cause to be filed* with the Trustee

a Written Request for the Corporation." (Emphasis added). Similarly, Section 4.1 of the 2001 Trust Agreement states, in pertinent part, that "[t]he Corporation shall submit a Written Request of Corporation for disbursements from Construction Fund in accordance with § 3.04 of the Trust Agreement." The 2001 Trust Agreement expressly provides that US Bank may rely on a Written Request that fulfills the requirements of Section 3.04 as "sufficient evidence" that the costs stated were incurred and are properly paid out of the 2001 Construction Fund and that there are no liens on the monies to be paid. Payment to United is to be made "upon receipt" of a Written Request.

From and after April 1, 2001, United submitted to US Bank, and US Bank honored, numerous Written Requests for disbursements from the 2001 Construction Fund as reimbursement for costs properly incurred by United with respect to LAX construction projects. Before December 5, 2002, US Bank had summarily granted each of these requests without making any attempt to substantiate the information contained therein.

On December 5, 2002, in accordance with Section 3.04 of the 2001 Trust Agreement, United submitted Requisition No. 11 (the "December 5 Draw Request") to US Bank, directing US Bank to disburse $1,191,547.29 in funds from the 2001 Construction Fund as reimbursement for costs incurred by United with respect to LAX projects. All of the costs associated with this request were incurred prior to December 5, 2002. US Bank did not honor the request or release the funds.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code.

On December 13, 2002, in accordance with Section 3.04 of the 2001 Trust Agreement, United submitted Requisition No. 12 (the "December 13 Draw Request") to US Bank, directing

US Bank to disburse $233,824.48 in funds from the 2001 Construction Fund for costs incurred by United in respect to LAX projects. US Bank did not honor the request or release the funds.

In addition to the amounts contained in the December 5 Draw Request and the December 13 Draw Request, United has incurred an additional $30,093.51 towards the cost of LAX projects.

On August 13, 2003, HSBC filed its Precautionary Motion for Relief From the Automatic Stay, to the Extent Necessary, to Effectuate Setoff Rights and to Apply and Disburse Monies in a Certain Construction Fund (Los Angeles International Airport Bond, Series 1997) (the "original Construction Fund Lift Stay Motion"), wherein HSBC sought relief from the automatic stay, to the extent necessary, to apply and disburse to bondholders approximately $37 million in funds on deposit in the Construction Fund. United consented to the relief sought in the Original Construction Fund Lift Stay Motion, except to the extent the Original Construction Fund Lift Stay Motion sought authorization to apply and disburse $4,891,660 of the 1997 Construction Fund (the "Retained Monies"), which monies United asked to be released. The difference between the Retained Monies (as to which United did not consent to relief from the automatic stay) and the balance of the 1997 Construction Fund (as to which United did consent to relief from the automatic stay) is that the Retained Monies represent the amount United claims it had incurred in construction costs, both before and after the petition date, but for which it had not sought to be nor had been reimbursed because it had never submitted a requisition to the trustee prepetition.[1] HSBC voluntarily withdrew the Original Construction Fund Lift Stay Motion solely as it applied to the Retained Monies, without prejudice to refile.

---

[1] On September 30, 2004, United submitted a Requisition for the Retained Monies.

On December 16, 2003, United filed an adversary proceeding against US Bank (the "US Bank Litigation") seeking a turnover of certain amounts on deposit in the 2001 Construction Fund. United's complaint set forth claims for the turnover of three different sets of construction funds. First, United sought a turnover of funds to reimburse costs for which United had never submitted a written request (the "Category I Claims"). Second, United sought a turnover of funds from the December 13 Draw Request. These funds related to costs incurred prepetition but for which a draw request was only submitted postpetition (the "Category II Claims"). United's third turnover claim was for funds for the December 13 Draw Request. United had submitted this draw request to US Bank prior to filing bankruptcy and prior to any other default for prepetition expenditures (the "Category III Claims").

Both United and US Bank filed motions for summary judgment. US Bank argued, *inter alia*, that United was not entitled to the turnovers because US Bank had a right to setoff pursuant to Bankruptcy Code Section 553. HSBC filed a supporting brief making the same argument.

On September 20, 2004, the bankruptcy court granted in part and denied part both parties' motions for summary judgment. The bankruptcy court addressed each category of United's turnover claims separately. With respect to the Category I Claims, the bankruptcy court found that because a Written Request was required under the agreement, such a request was a condition precedent to the requirement that US Bank turnover monies from the 2001 Construction Fund. Because United had not complied with the requirement of submitting a Written Request, the bankruptcy court denied United's turnover request as to these funds.

As to the Category II Claims, the bankruptcy court found that the Category II Claims were subject to US Bank's setoff rights pursuant to Section 553 in that there was mutuality of parties; and

both United's claims against US Bank (related to and for payment of construction costs from the 2001 Construction Fund) and US Bank's claim against United (for amounts due on the US Bank bonds) arose pre-petition.

The Category III claims were evidenced by a Written Request submitted by United prior to the petition date. The bankruptcy court found that in the absence of default, and pursuant to the parties' agreement, US Bank had an obligation to turnover the funds to United as soon as a request was made. Therefore, relying on the maxim of equity codified in the California Code, "that which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due," the bankruptcy court held that once United filed the request, that portion of the 2001 Construction Fund represented by the Category III Claims became property of United; and turnover was appropriate.

On February 5, 2004, after the initiation of the US Bank Litigation, but prior to its resolution, HSBC filed its Motion for Relief from the Automatic Stay, to the Extent Necessary, to Effectuate Setoff Rights and Apply and Disburse Retained Monies in a Certain Construction Fund (Los Angeles International Airport Bond, Series 1997) (the "Retained Monies Lift Stay Motion"). In the retained Monies Lift Stay Motion, HSBC sought relief from the automatic stay to apply and disburse to bondholders, as provided in the 1997 Trust Agreement, the Retained Monies.

United and HSBC agreed that because the Retained Monies were analogous to the funds that were the subject of the Category I Claims in the US Bank Litigation, insofar as United had not sought reimbursement thereof through requisitions prior to the petition date, the 2001 Construction Fund Opinion was dispositive of the issues raised in the Retained Monies Lift Stay Motion and required the granting of that motion. Therefore, on October 15, 2004, United and HSBC agreed to

the entry of an Agreed Order that granted the Retained Monies Lift Stay Motion "for the reasons stated in the US Bank Construction Fund Order."

## LEGAL STANDARD

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (*Hoseman*). All of the facts and the inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *Hoseman*, 322 F.3d at 473. Similarly, a bankruptcy court's interpretation of statute is a question of law reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). The Court reviews the bankruptcy court's factual findings for clear error. *Hoseman*, 322 F.3d at 473.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no verdict could reasonably be returned for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

US Bank appeals the September 29, 2004 order of the bankruptcy court, arguing that the bankruptcy court erred in granting summary judgment in United's favor as to the Category III Claims. United appeals the September 29, 2004 order of the bankruptcy court, arguing that the bankruptcy court erred in granting summary judgment in US Bank's favor as to the Category II Claims and Category I Claims. United appeals the October 15, 2004 order of the bankruptcy court,

making the same arguments it makes in regards to the bankruptcy court's September 29, 2004 order as to the Category I and II Claims.

*The Category I Claims*

The Category I Claims consist of funds for which United seeks reimbursement and for which United had never submitted a Written Request. The bankruptcy court held that the submission of a Written Request was a condition precedent to the requirement that US Bank turnover monies from the 2001 Construction Fund. Because United had not complied with the requirement of submitting the Written Request, United's request for a turnover was denied. Similarly, United had not submitted a requisition for the monies held by HSBC in the 1997 Construction Fund.

United argues that the bankruptcy court erred in finding that the submission of the Written Request was a condition precedent to obtaining payment from the 2001 Construction Fund. As in the bankruptcy court, United argues that the Written Request was ministerial because United immediately obtained a property interest in the 2001 Construction Fund upon incurring construction costs.

The 2001 Trust and Payment Agreements do not support United's argument. As indicated above, United must submit a Written Request before US Bank has a payment obligation of any kind. In light of the provisions, a Written Request was a substantive condition precedent to United's obtaining disbursements from the 2001 Construction Fund. Because United failed to submit the Written Request with respect to the post-petition costs, US Bank has no obligation to pay United on its claim.

*The Category II Claims*

The Category II Claims consist of funds for which United seeks reimbursement and for which United had incurred prepetition but for which a Written Request was not submitted until after United filed bankruptcy. The bankruptcy court held that the funds were subject to US Bank's setoff rights pursuant to Section 553 of the Bankruptcy Code. United argues that the bankruptcy court erred in finding that the funds were subject to US Bank's setoff rights.

The allowance of a setoff lies within the discretion of the bankruptcy court. *See In re Meyer Medical Physicians Group, Ltd.*, 385 F.3d 1039, 1041 (7th Cir. 2004) (*In re Meyer*). Section 553 authorizes the setoff of "mutual" debts. 11 U.S.C. § 553. "Mutuality" exists if the debts have arisen in the same right and between the same parties. *See In re Meyer*, 385 F.3d at 1041; *Martin v. Wells Fargo Bank*, 91 Cal. Rptr. 2d 653, 657 (2001). The character of the debt does not affect mutuality. *See In re Meyer*, 385 F.3d at 1041.

Here, the claims of United and the trustees against each other arise out of the same bond transactions and series of bond documents, which created the parties' respective capacities toward each other. Furthermore, as found by the bankruptcy court, United's reliance on *In re Ben Franklin Retail Store, Inc.*, 202 B.R. 955 (N.D. Ill. 1996), in an effort to defeat mutuality, is misplaced. Unlike the instant cases, *In re Ben Franklin Store, Inc.* involved a special purpose account that was held by a bank in trust for the debtor, and the debtor continued to "own" the account beneficially rather than simply being owed the money in the account. Accordingly, the bank's equitable obligation to the debtor with respect to the special account was of a different nature than the debtor's legal obligation to the bank. *See In re Ben Franklin Store, Inc.*, 202 B.R. at 958. In contrast, the

construction funds of the instant cases are not held in trust for United; instead, United has a legal claim to the funds just as the banks have a legal claim against United.

*The Category III Claims*

The Category III Claims consist of funds for which United seeks reimbursement and for which United had incurred prepetition and for which a Written Request was submitted before United filed bankruptcy. The bankruptcy court held that a turnover of the funds to United was appropriate because US Bank had an obligation to turnover the funds to United as soon as a request was made. Applying the equitable maxim "that which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due," the bankruptcy court held that the funds became United's property when it submitted the Written Request.

US Bank argues that the bankruptcy court erred in finding that United's right to reimbursement from the 2001 Construction Fund arose upon the submission of a Written Request in proper form. US Bank contends that it had the right to withhold payment to verify the accuracy of the information submitted. As demonstrated by the provisions set forth above, nothing in the Payment Agreement or Trust Agreement imposed any duty on US Bank to confirm the validity of the Written Request. Instead, per the agreements, US Bank was to rely solely on the Written Request and to make payment to United "upon receipt . . . of a Written Request [by United]." Accordingly, the bankruptcy court did not err in finding that US Bank could not exercise discretion in providing the funds following a proper Written Request.

US Bank also argues that the bankruptcy court erred in apply equitable principles.

The directions set forth in a trust agreement are the sole guide to the conduct of the trustee. Absent any conferred discretion, the trustee must follow the trust agreement. *See Bryson v. Bryson*,

construction funds of the instant cases are not held in trust for United; instead, United has a legal claim to the funds just as the banks have a legal claim against United.

*The Category III Claims*

The Category III Claims consist of funds for which United seeks reimbursement and for which United had incurred prepetition and for which a Written Request was submitted before United filed bankruptcy. The bankruptcy court held that a turnover of the funds to United was appropriate because US Bank had an obligation to turnover the funds to United as soon as a request was made. Applying the equitable maxim "that which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due," the bankruptcy court held that the funds became United's property when it submitted the Written Request.

US Bank argues that the bankruptcy court erred in finding that United's right to reimbursement from the 2001 Construction Fund arose upon the submission of a Written Request in proper form. US Bank contends that it had the right to withhold payment to verify the accuracy of the information submitted. As demonstrated by the provisions set forth above, nothing in the Payment Agreement or Trust Agreement imposed any duty on US Bank to confirm the validity of the Written Request. Instead, per the agreements, US Bank was to rely solely on the Written Request and to make payment to United "upon receipt . . . of a Written Request [by United]." Accordingly, the bankruptcy court did not err in finding that US Bank could not exercise discretion in providing the funds following a proper Written Request.

US Bank also argues that the bankruptcy court erred in apply equitable principles.

The directions set forth in a trust agreement are the sole guide to the conduct of the trustee. Absent any conferred discretion, the trustee must follow the trust agreement. *See Bryson v. Bryson*,

62 Cal. App. 170, 176 (1923). The interpretation of a trust agreement and the determination of an appropriate remedy for a breach of that agreement are within the jurisdiction of equity. *See Alexander v. Hillman*, 296 U.S. 222, 239 (1935).

Pursuant to the Payment Agreement and Trust Agreement, California law governs. California has codified the common law equitable maxim that "which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." Cal. Civ. Code § 3529. This equitable doctrine has been utilized by courts in a variety of circumstances. *See Cortez v. Purolator Air Filtration Prod. Co.*, 96 Cal. Rptr. 2d 518 (2000) (employee had an unconditional property right in unpaid wages); *Campbell v. Bauer*, 104 Cal. App. 2d 740 (1951); *Lowe v. Los Angeles Suburban Gas Co.*, 24 Cal. App. 367 (1914).

Here, the Trust Agreement provided that US Bank was to make a payment to United "upon receipt" of a Written Request. United filed its Written Request with US Bank prior to filing bankruptcy; but US Bank has refused to provide the funds, although it had received the Written Request. United made a proper demand on US Bank for funds; US Bank's payment to United based on that Written Request may be regarded "as done" pursuant to the above equitable maxim. As such, US Bank's payment to United is regarded "as done."

Furthermore, the bankruptcy court properly found that the balance of equities favors United and not US Bank. The bankruptcy code requires United to suspend payments on the bonds and allows United the continued use of the facilities. These provisions are designed to effect an equitable distribution among all creditors of a bankruptcy estate. In addition, it is not inequitable if the bondholders receive less than the full amount of their claim since, in a less than fully solvent bankruptcy, incomplete satisfaction of claims necessarily occurs. In contrast, it would be inequitable

to allow US Bank the right to a setoff merely because United filed for bankruptcy when that right did not exist at the time the payment to United was due.

US Bank further argues that the bankruptcy court erred in finding that treating the funds as if they had been transferred to United before the bankruptcy filing terminated any security interest US Bank held in the funds. However, treating the funds as having been transferred to United before it filed for bankruptcy did have the effect of terminating any security interest held by US Bank. *See* Cal. Com. Code §§ 9312(b)(3) (security interest in money perfected only by possession); 9313(d) (if perfection of security interest depends on possession, perfection continues only while secured party retains possession).

Lastly, as to these funds, the bankruptcy court correctly found that US Bank did not have a right to a setoff of the funds because, unlike the Category II Claims, the equitable transfer of the funds created ownership by United. Accordingly, mutuality no longer was present. *See In re Ben Franklin Store, Inc.*, 202 B.R. at 958.

As to the funds held by HSBC, the parties agree that the Retained Monies were analogous to the funds that were the subject of the Category I Claims. Accordingly, the agreed order entered by the bankruptcy court that granted the Retained Monies Lift Stay Motion is affirmed.

## CONCLUSION

Based on the foregoing, the decision of the bankruptcy court as to the September 29, 2004 order is affirmed; and the decision of the bankruptcy court as to the October 15, 2004 order is affirmed.

Date: February 24, 2005

John W. Darrah, Judge
United States District Court